# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| **vs.** | : | **NO. 06-0140-02** |
| **MARK LAMONT WALKER** | : | |

## M E M O R A N D U M

**STENGEL, C. J.**                                                                                              October 26, 2017

      Mark Lamont Walker, a prisoner at the Federal Correctional Institution at Estill, South Carolina, has filed a *pro se* motion for reduction of sentence pursuant to Amendment 782 to the United States Sentencing Guidelines, and pursuant to 18 U.S.C. § 3582(c)(2). The government has responded. For the following reasons, I will deny the motion.

      On December 6, 2006, Mr. Walker was charged in a superseding indictment in Count One with possession of five kilograms or more of cocaine with intent to distribute, and in Count Two with possession of five kilograms or more of cocaine with intent to distribute within one thousand feet of a school. On March 29, 2007, Mr. Walker pleaded guilty to Count One pursuant to a plea agreement with the government. In the agreement, he stipulated that he committed the offense charged in Count Two and would be sentenced as if he were convicted of that offense. See PSR ¶ 11. Mr. Walker further agreed that he was responsible for the distribution of fifteen kilograms of cocaine, delivered to his co-defendant, Raymond Mainor, on March 8, 2006. Id. at ¶ 8.

Before sentencing, the Probation Office determined that Mr. Walker's base offense level was 34. That level was increased by two because the activity occurred within a school zone, bringing his level to 36. He received a two-level reduction because he met the criteria for relief under the safety valve provision of Section 5C1.2 of the United States Sentencing Guidelines, and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 31. Mr. Walker was in criminal history category I which yielded a sentencing guideline range of 108 to 135 months' imprisonment. On January 31, 2008, I sentenced Mr. Walker to the lowest end of the guideline range, i.e., 108 months' imprisonment.

In June 2010, Mr. Walker was charged in a superseding indictment in the United States District Court for the Northern District of Georgia (No. 10-CR-162-04) with one count of conspiracy to possess more than five kilograms of cocaine with intent to distribute, and one count of conspiracy to commit money laundering. Mr. Walker participated in a drug trafficking organization that was based in Atlanta, Georgia from 2003 to 2006 during which Mr. Walker obtained large quantities of cocaine from suppliers in Georgia and transported it to the Philadelphia area for distribution. The drug transaction charged in the 2006 Philadelphia case was related to this conspiracy and was treated as relevant conduct in the Georgia case.

After his arrest in Philadelphia in March 2006 and while in custody in this case, Mr. Walker had co-conspirators retrieve drug proceeds and conduct financial transactions on his behalf, including paying mortgages on his two homes. One co-conspirator laundered $284,000 on Mr. Walker's behalf through a realty company created for this

purpose.  Another co-conspirator assisted Mr. Walker in opening an overseas bank account where he deposited $173,000.  Yet another co-conspirator helped Mr. Walker purchase a home in Georgia using $237,000 in drug proceeds.

Mr. Walker entered into a plea agreement with the government in the Northern District of Georgia.  On January 7, 2013, he pled guilty to the drug and money laundering charges.  In the agreement, Mr. Walker stipulated that he was responsible for the distribution of in excess of 150 kilograms of cocaine.  The base level for this offense was 38.  Mr. Walker received a two-level enhancement for the money laundering offense, a two-level enhancement for using a shell corporation to launder money, and a four-level enhancement for his role in the offense, bringing his offense level to 46.  With a three level reduction for acceptance of responsibility, his total offense level was 43.  Still in criminal history category I, his sentencing guideline range at that offense level was life imprisonment.  On September 3, 2013, the Honorable Richard W. Story of the Northern District of Georgia varied from this range pursuant to the Section 3553(a) factors, and imposed a sentence of 102 months' imprisonment to run consecutively to the 108-month sentence I imposed here.

Mr. Walker filed a motion for a sentence reduction pursuant to Section 3582(c)(2) and Amendment 782 in both criminal actions.  He notes that both of his sentences were treated as an aggregate sentence of 210 months by the Bureau of Prisons, and as such, his eligibility for a sentence reduction may be independently considered in each case.  On September 14, 2017, Judge Story denied Mr. Walker's motion for a reduction to his Georgia sentence.  See Document #512 (10-cr-0162-04).  Judge Story held that in re-

sentencing Mr. Walker, he could not go lower than the low-end of the amended guideline range of 324 months' imprisonment. See § 1B1.10(b)(2)(A). Because the court had already sentenced Mr. Walker to 102 months, relief under Amendment 782 was unavailable.

Title 18 of the United States Code, Section 3582(c)(2) provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Under Section 1B1.10: "In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (d) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2).

In Dillon v. United States, 560 U.S. 817 (2010), the Supreme Court of the United States addressed the process for application of a retroactive guideline amendment, emphasizing that Section 1B1.10 is binding. The Court required district courts to follow a two-step approach:

> At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. Specifically, §

> 1B1.10(b)(1) requires the court to begin by "determin[ing] the amended guideline range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing. "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." Ibid.
>
> Consistent with the limited nature of § 3582(c)(2) proceedings, § 1B1.10(b)(2) also confines the extent of the reduction authorized. Courts generally may "not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range" produced by the substitution. § 1B1.10(b)(2)(A). . . .
>
> At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.

Id. at 827.

Under step two of this inquiry, Section 1B1.10 directs that "the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining: (I) whether a reduction in the defendant's term of imprisonment is warranted; and (II) the extent of such reduction, but only within the limits described in subsection (b)." See § 1B1.10, Application Note 1(B)(i); see also § 1B1.10, Background ("the authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right"). The

5

court may consider all pertinent information in applying the Section 3553(a) factors and determining whether and by how much to reduce the defendant's sentence. It must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. See § 1B1.10, Application Note 1(B)(ii), (iii). The application note explains that these factors are relevant in determining whether and by how much to reduce a sentence, but only within the limits set forth in Section 1B1.10(b).

Here, Amendment 782 reduced the applicable guideline range in Mr. Walker's case from 34 to 32, and after the various enhancements and reductions, his total offense level is 29. Given his criminal history category of I, his amended guideline range is 87 to 108 months' imprisonment.

Mr. Walker has been in federal custody since March 8, 2006, and thus has now been in prison for nearly 140 months. In essence, he has completed the 108-month term of imprisonment I gave him in 2008, and has completed thirty-two months of his consecutive sentence from the Georgia action. Because this sentence was aggregated with the Georgia sentence, the Bureau of Prisons did not calculate a completion date for this sentence, nor can it separately calculate the sentences absent a court Order. A check of the Bureau of Prisons website revealed a release date for Mr. Walker of June 28, 2021, less than four years from now.

The government argues against granting a reduction in Mr. Walker's sentence. First, it contends that Mr. Walker has effectively finished the sentence here and is currently serving the 102 months' imprisonment imposed by Judge Story. Granting a

6

reduction in his Philadelphia sentence would have the effect of reducing his Georgia sentence, for which he was found not eligible. He was ineligible for a reduction in the Georgia sentence because of the substantial variance he received at sentencing. The government warns that Mr. Walker should not be allowed to circumvent this legal impediment simply because the Bureau of Prisons aggregated the two sentences. A reduction here would enable the defendant, the government insists, to obtain a benefit that is not available to other defendants who are ineligible for relief because they received variances at sentencing that placed them below the amended range.

Second, and more importantly for our purposes here, the government argues that Mr. Walker received safety valve relief at the sentencing in the Philadelphia case, which effectively eliminated the mandatory sentence of 120 months, and resulted in a lower guideline range. It contends that Mr. Walker did not deserve such consideration because at the time, he was simultaneously committing or at least planning to commit the money laundering activities charged in the Georgia action. I agree.

This serious post-conviction criminal conduct strongly weighs against any reduction in sentence in this case. Mr. Walker blatantly engaged in such conduct after providing to the government truthful and complete information about his criminal activity in order to obtain safety valve relief that he clearly did not deserve. Granting a sentence reduction despite his continued criminal conduct would send the message that such conduct will not preclude sentencing relief. Thus, I will decline to grant a reduction in this case, and deny Mr. Walker's request for relief.

An appropriate Order follows.